

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEARLE VISION, INC., a Delaware Corporation, and PEARLE, INC., a Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 04 C 4349 Judge Joan H. Lefkow |
| VICTOR ROMM, individually, VICTOR ROMM d/b/a ROMM & COMPANY, INC., VICTOR ROMM d/b/a/ ROMM VISION ENTERPRISES, INC., VICTOR ROMM d/b/a EYES 2000 LTD., ROMM & COMPANY, INC., an Illinois Corporation, ROMM VISION ENTERPRISES, INC., an Illinois Corporation, and EYES 2000 LTD., an Illinois Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pearle Vision, Inc. and Pearle, Inc., (together, "Pearle Vision") move for dismissal of defendants' Counterclaim for want of prosecution and an order of default in favor of Pearle Vision under Local Rule 41.1. For the following reasons, the court finds that defendants' counterclaim should be dismissed.

Pearle Vision filed suit to terminate four Pearle Vision franchises and to recover the lease premises. Defendants counterclaimed, alleging, in general that their franchises were wrongfully terminated. On September 30, 2004, this court granted the Emergency Motion of Pearle Vision, Inc. and Pearle, Inc. for a Preliminary Injunction which, among other things, awarded Pearle

Vision immediate possession of the premises upon which defendants operated their franchises and instructed defendants not to infringe upon Pearle Vision's trademarks or otherwise hold themselves out as a present or former franchisee of Pearle Vision.

On February 15, 2005, defendants' attorneys were granted leave to withdraw for lack of cooperation. In the Order granting them leave, the court directed defendant Romm to appear individually with new counsel for the corporate entities for the next status hearing, which was set for March 8, 2005. Romm failed to appear for that status hearing, however, and no counsel appeared on behalf of the corporate entities. The court set the next status hearing for March 29, 2005.

On March 29, 2005, Romm appeared and informed the court that he planned to retain a new attorney. The court set the next status hearing for April 18, 2005 and warned Romm that he should retain a new attorney by that date. Despite the court's warning, on April 18, 2005, Romm once again failed to appear for a scheduled status hearing and no counsel filed an appearance on his behalf or on behalf of any of the corporate entities. The court set another status hearing for May 17, 2005.

On May 13, 2005, Pearle Vision filed their Motion for Dismissal for Want of Prosecution and Order of Default. On May 17, 2005, Pearle Vision also filed a Motion for Summary Judgment. At the May 17, 2005 status hearing, the court entered a briefing schedule on the Motions allowing defendants until June 16, 2005 to file responses. Defendants failed to file a response by June 16, 2005.

Instead, on June 23, 2005, a full week after the court's stated deadline for filing responses, Gregory J. Ellis filed an appearance on behalf of Romm and the corporate entities and filed a motion for an extension of time to respond to the Motions. On July 13, 2005, the court

entered another briefing schedule on the Motions allowing defendants until July 27, 2005 to file and serve responses to the Motions and allowing Pearle Vision until August 10, 2005 to file replies. Again, defendants failed to file a response.

Thus, on August 24, 2005, the court ordered defendants to respond by August 30, 2005, to the Motions or suffer dismissal of their counterclaim. Defendants still failed to respond.

Under Federal Rule of Civil Procedure 41 and Northern District of Illinois Local Rule 41.1, the court may dismiss an action or counterclaim for failure to prosecute or to comply with the rules of the court's orders. Dismissal of a case "is one of the tools available to district courts 'to achieve the orderly and expeditious disposition of cases.'" *Williams v. Chic. Bd. Of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (*quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1389 (1962)). Because dismissal is such a harsh sanction, it "should be used 'only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing.'" Id. (*quoting Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir. 1998) (citations omitted)).

Defendants' conduct compels this court to reach the conclusion that their counterclaim should be dismissed for failure to prosecute. Defendants have failed to appear for status hearings or to respond to Pearle Vision's dispositive motions even after the court twice extended defendants' time for filing responses. While a new attorney ultimately filed an appearance on behalf of Romm and the corporate defendants, the attorney has done nothing further to prosecute defendants' counterclaim. Defendants were warned that a failure to respond would result in the dismissal of their counterclaim. Defendants have delayed and flagrantly disregarded this court's orders and have, by these actions, demonstrated their disinterest in their case.

Therefore, for the reasons discussed above, we order defendants' case dismissed with

prejudice.

## CONCLUSION

For the reasons stated above, Pearle Vision's Motion for Dismissal for Want of

Prosecution (#52) is granted.

Enter: *Charles P. Kocoras*

CHARLES P. KOCORAS
Chief United States District Judge for

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 1, 2005

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PEARLE VISION, INC., a Delaware Corporation, and PEARLE, INC., a Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 04 C 4349 Judge Joan H. Lefkow |
| VICTOR ROMM, individually, VICTOR ROMM d/b/a ROMM & COMPANY, INC., VICTOR ROMM d/b/a/ ROMM VISION ENTERPRISES, INC., VICTOR ROMM d/b/a EYES 2000 LTD., ROMM & COMPANY, INC., an Illinois Corporation, ROMM VISION ENTERPRISES, INC., an Illinois Corporation, and EYES 2000 LTD., an Illinois Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Pearle Vision, Inc. and Pearle, Inc. (together, "Pearle Vision"), allege in Counts I - VIII of their nine-count Second Amended Complaint that defendants, Victor Romm ("Romm"), individually, Victor Romm d/b/a Romm Vision Enterprises, Inc., Victor Romm d/b/a Eyes 2000, Ltd., Romm & Company, Inc., Romm Vision Enterprises, Inc., and Eyes 2000, Ltd., breached four Franchise Agreements under which they franchised Pearle Vision optical stores thereby forfeiting their rights to operate the franchises or to occupy the premises upon which they are located. Count IX, which is not a subject of this motion, alleges a violation of the Lanham Act (15 U.S.C. §§ 1051-1127) and the common law of the State of Illinois due to defendants'

unauthorized use of the "Pearle" and "Pearle Vision" names and marks. Pearle Vision moves for summary judgment on Counts I - VIII. For the reasons stated below, the motion is granted.

Pearle Vision also moves for summary judgment on defendants' counterclaim which alleges, in general, that their franchises were wrongfully terminated. Since the court orders dismissal of defendants' counterclaim for want of prosecution in a companion order entered today, the court need not address Pearle Vision's motion for summary judgment on defendants' counterclaim.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S.

Ct. 2505 (1986).

The United States District Court Rules for the Northern District of Illinois, Local Rule 56.1(3), however, requires a party opposing a motion for summary judgment to serve and file a concise response to the movant's statement of material facts, as well as a statement of any additional facts that require the denial of summary judgment. Local Rule 56.1(b)(3)(B) specifically provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Thus, where a party fails to a concise opposing response statement, the court properly "departs from its usual posture of construing facts and inferences favorably to the non-moving party and accepts as true all material facts contained in the moving party's supporting statement." *Brasic v. Heinemann's Inc.*, 121 F.3d 281 (7th Cir. 1997); *Smith on Behalf of Smith v. Severn*, 129 F.3d 419 (7th Cir. 1997); *Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir. 1993).

## FACTS

Pearle Vision owns, franchises and leases retail optical stores. (Def. L.R. 56.1 ¶ 1.) Beginning in 1997, Pearle Vision entered into four separate Franchise Agreements with Romm and the various corporations he formed to operate the Pearle Vision optical store franchises in Villa Park, Geneva, Elk Grove Village and Elgin. (*Id.* ¶ 6-9.)

Specifically, on or about June 2, 1997, Pearle Vision entered into a Franchise Agreement with Romm Vision Enterprises, Inc., for the Pearle Vision store located at 1749 Randall Road, Geneva, Kane County, Illinois (the "Geneva store"). (*Id.* ¶ 7.) Romm Vision Enterprises, Inc. was an Illinois corporation, but it was involuntarily dissolved by the Illinois Secretary of State on October 1, 2003. (*Id.*) Romm, the president of Romm Vision Enterprises, Inc., continued to operate the Geneva store in his individual capacity after the dissolution of Romm Vision

Enterprises, Inc. (*Id.*)

On September 21, 1998, Romm Vision Enterprises, Inc., entered into a Lease with Geneva Christina, L.L.C., the landlord for the premises at the Geneva store. (Second Amend. Compl., Count IV, ¶ 24, 25.) Pearle Vision is a guarantor of that Lease, and is obligated to make payments not made by Romm Vision Enterprises, Inc. or Romm. (*Id.*) The Rider to the Lease Agreement signed by the franchisee, Geneva Christina, L.L.C., and Pearle Vision give Pearle Vision the right, at its option, to assume the balance of the term of the Lease on termination of the Geneva Franchise Agreement. (*Id.*) Pearle Vision exercised that option in a letter to the landlord dated June 29, 2004. (*Id.*)

On or about April 2, 1998, Pearle Vision entered into a Franchise Agreement with Romm and Romm Vision Enterprises, Inc., for the Pearle Vision store located at 914 Elk Grove Town Center, Elk Grove, Cook County, Illinois ("the Elk Grove store"). (Def. L.R. 56.1 ¶ 8.) Romm personally guaranteed the performance of all obligations of the former franchisee, Romm Vision Enterprises, Inc., through a personal guaranty made part of and incorporated into the Elk Grove Franchise Agreement. (*Id.*)

On January 14, 1998, Romm entered into a Lease with Elk Grove Town Center, L.L.C., the landlord for the premises of the Elk Grove store. (Second Amend. Compl., Count VI, ¶ 25, 26) Attachment J-1 to the Franchise Agreement, which was also signed by the landlord, gives Pearle Vision the right, at its option, to assume the balance of the term upon the termination of the Franchise Agreement. (*Id.*) Pearle Vision exercised that option in a letter sent to the landlord on June 29, 2004. Paragraph 34A of the Franchise Agreement gave Pearle Vision the right to assume the third-party lease from the franchisee. (*Id.*)

On about August 27, 2001, Pearle Vision entered into a Franchise Agreement with Romm

& Company, Inc., for the Pearle Vision store located at 351 West North Avenue, Villa Park, DuPage County, Illinois ("the Villa Park Store"). (Def. L.R. 56.1 ¶ 6.) Romm personally guaranteed the performance of all the obligations of the former franchisee, Romm & Company, Inc. (*Id.*)

Pearle Vision is the owner of a leasehold interest in the property at the Villa Park Store. (Second Amend. Compl., Count II, ¶ 24, 25.) Pearle Vision and Romm & Company, Inc. entered into a Sublease effective as of September 1, 2001 for the Pearle Vision store located on the property. (*Id.*) Paragraph 10 of the Sublease states that Pearle Vision may terminate the Sublease immediately if the subtenant is in default under the Villa Park Franchise Agreement and fails to cure the default within ten days after notice from Pearle Vision. (*Id.*)

On or about April 7, 2003, Pearle Vision entered into a Franchise Agreement with Eyes 2000, Ltd., for the Pearle Vision store located at 320-328 Randall Road, Elgin, DuPage County, Illinois ("the Elgin store"). (Def. L.R. 56.1 ¶ 9.) Romm personally guaranteed the performance of all obligations of the former franchisee, Romm & Company, Inc., through a personal guaranty made part of and incorporated into the Elgin Agreement. (*Id.*)

On August 25, 2002, Eyes 2000 Ltd., entered into a Lease with Greco/Reggi Randall, L.L.C., for the premises of the Elgin store. (Second Amend. Compl., Count VIII, ¶ 25.) Pearle Vision guaranteed all payments under that Lease. (*Id.*) The franchisee has the right to assign the Lease to Pearle Vision without the landlord's consent, and the Elgin Franchise Agreement states that upon termination Pearle Vision has the right to assume the third-party Lease. (*Id.*)

Each of the four Franchise Agreements contained identical default provisions. (Def. L.R. 56.1 ¶ 10.) Paragraph 32A of the Franchise Agreements provides that, if not cured within 30 days of a Notice of Termination, the occurrence of any of the following defaults will cause the

Agreement to terminate:

> "Franchisee fails to comply with the provisions of this Agreement relating to...
> (k) Recordkeeping, Reporting, Audits, ...
> (m) Franchisee Insurance and Indemnification, ...
> (o) Payments; [or]
>
> (ii) Franchisee fails to maintain and operate the Franchise Business in accordance with this Agreement and the standards and specifications prescribed by [Pearle Vision].
>
> (iii) Franchisee fails to pay when due any amount owed [Pearle Vision] (or any amount guaranteed by [Pearle Vision] on Franchisee's behalf), its Affiliates or any other person or entity in connection with the operation of the Franchise Business.
>
> (v) Franchisee fails to comply with any other agreement to which [Pearle Vision] or its Affiliates and Franchisee (or any Owner of Franchisee) are parties, including but not limited to other franchise agreements to which Franchisee (or any Owner of Franchisee) is a party with [Pearle Vision]; [or]
>
> (vi) Franchisee fails to comply with the TPDA [Third-Party Dispensing Agreement] if such agreement is a part hereof." (*Id.*)

In addition, Paragraph 32B provides that the Franchise Agreements would terminate without an opportunity to cure if there were two or more defaults within a twelve month period. (*Id.*)

From September 2003 through May 2004 when Pearle Vision terminated defendants' franchises, defendants committed multiple violations of the Franchise Agreements. In particular, Paragraph 13 required defendants to submit to Pearle Vision monthly reports detailing gross revenues for the preceding month, while paragraphs 13 and 14 required defendants to pay Pearle Vision a Royalty and an Advertising Contribution based on a specified percentage of monthly gross revenues. (*Id.* ¶ 11, 13.) From September 2003 through May 2004, Romm failed to submit to Pearle Vision the monthly reports and failed to pay Pearle Vision its percentage of the franchises' gross revenue. (*Id.* ¶ 13-16.) On January 28, 2004, Pearle Vision's Director of Franchise Financial Services, Chiquita Adams ("Adams"), sent Romm a letter in which she

demanded immediate submission of the monthly gross revenue reports for each of the four franchises for September through December 2003, as well as payment for the franchises' respective Royalty and Advertising contributions for those months. (*Id.* ¶ 16.) Defendants failed to cure the defaults. (*Id.* ¶ 13-16.)

On November 11, 2003, Pearle Vision received notice from Geneva Christina L.L.C. ("Landlord"), the landlord for defendants' Geneva store. (*Id.* ¶ 21.) Pearle Vision paid the November 2003 rent on behalf of defendants' Geneva franchise. On November 20, 2003, Pearle Vision notified Romm that he was in default of Paragraph 32 A(3) of his Franchise Agreement.

On November 26, 2003, Pearle Vision received notice from Romm's liability insurer that his insurance on all four franchises had been cancelled for non-payment of the premiums. (*Id.* ¶ 18.) Paragraph 24 of the Franchise Agreements required Romm to maintain liability insurance in specified amounts. (*Id.*) On December 2, 2003, Pearle Vision served Romm with a Notice of Default under the Franchise Agreements for his failure to maintain liability insurance and, pursuant to the Franchise Agreements, gave him thirty days to cure the default. (*Id.*)

Pearle Vision maintained an inventory purchase program through which franchisees placed orders for items to stock on the shelves and to fulfill specific requests by individual customers. (*Id.* ¶ 24, 25.) Romm acknowledges placing multiple orders through Pearle Vision's inventory program, receiving the ordered products, and then failing to pay Pearle Vision for the products in violation of the Franchise Agreements. (*Id.*)

In Paragraph 39 of the Franchise Agreements, Romm and Pearle Vision agreed to provide products and professional services to third-party managed vision care programs in accordance with a Third-Party Dispensing Agreement ("TPDA"), which was attached to and incorporated into each of the Franchise Agreements. (*Id.* ¶ 19, 20.) The TPDA itself incorporated a Third-

Party Provider Agreement ("TPPA"). (*Id.*) In October 2003, Cole Managed Vision, which administered the TPDA and TPPA on behalf of Pearle, performed an audit of defendants' practices under the TPDA and TPPA. (*Id.*) The audit examined a sample of the claims submitted by defendants under the TPDA and TPPA, and the audit revealed that approximately 95% of the submitted claims contained errors or false statements. (*Id.*) The false statements ranged from the wrong price being charged for products and services, to inaccurate portions of the member's payments having been submitted to Cole Managed Vision, to the failure to provide the charged product or service. (*Id.*) These false statements violated the TPDA and TPPA, and thus, on September 29, 2003, Cole Managed Vision informed Romm that the TPDA and TPPA for the Geneva franchise would be terminated on December 31, 2003. (*Id.*) Romm failed to cure the non-conforming practices that were set out in detail in the Default Notices resulting in the termination of the TPDA and TPPA incorporated into the four Franchise Agreements.

On May 4, 2004, Pearle Vision served defendants with Notices of Default for all four franchises based on their failure to submit monthly revenue reports as required by Paragraphs 13D and 32A(i)(k) of the Franchise Agreements and their failure to pay Pearle Vision amounts owing for products and services provided to defendants, as well as the Royalty and Advertising Contribution Payments required under paragraphs 13 and 14, and for rent on the Villa Park Store. (*Id.* ¶ *12.*) Pursuant to the Franchise Agreements, Pearle Vision gave defendants thirty days to cure the defaults. (*Id.* ¶ *12.*) Defendants failed to cure the defaults and thus, Pearle Vision terminated all four franchises. (*Id.* ¶ *12.*)

## DISCUSSION

### I.  Breach of Franchise Agreements

In counts I, III, V, and VII of the Complaint, Pearle Vision alleges that defendants

committed multiple material violations of the four Franchise Agreements that entitle Pearle Vision to terminate the franchises. Pearle Vision bases its right to cancel the Franchise Agreements not only on defendants' failure to cure their defaults in a timely fashion once they received notice, but also on the repeated violations committed by defendants within a 12-month period.

The facts bearing on Pearle Vision's motion are uncontested. Defendants failed to serve and file a response to Pearle Vision's statement of material facts, a statement of their own setting forth any additional facts supporting a denial of summary judgment, or even a brief opposing Pearle Vision's motion for summary judgment. Accordingly, pursuant to Local Rule 56.1(b)(3)(B), the court deems admitted all facts set forth in Pearle Vision's Statement of Undisputed Material Facts and draws all reasonable inferences therefrom in Pearle Vision's favor. *Brasic v. Heinemann's Inc.*, 121 F.3d 281 (7th Cir. 1997); *Smith on Behalf of Smith v. Severn*, 129 F.3d 419 (7th Cir. 1997); *Stewart v. McGinnis*, 5 F.3d 1031 (7th Cir. 1993).

The Franchise Agreements' identical default provisions authorize Pearle Vision to terminate the franchises for failure to comply with any provision of the Franchise Agreements, any agreement contained therein, or any agreement to which Pearle Vision is a party. (Def. L.R. 56.1 ¶ 32A.) The Illinois Franchise Disclosure Act, however, requires a franchisor to show "good cause" before terminating a franchise. Nevertheless, "good cause" is similarly defined, so far as it relates to this case, as either "the failure of the franchisee to comply with any lawful provisions of the franchise or other agreement and to cure such default after being given notice thereof and a reasonable opportunity to cure such default, which in no event need be more than 30 days," or, "without the requirement of notice and an opportunity to cure, situations in which the franchisee...repeatedly fails to comply with the lawful provisions of the franchise or other

agreement." 815 ILCS 705/19(b), (c)(4).

In support of its motion for summary judgment, Pearle Vision cites numerous discrete breaches of the Franchise Agreements justifying its termination of defendants' franchises. The record evidence shows that defendants breached the Franchise Agreements by: failing to submit monthly reports detailing gross revenues and failing to pay Pearle Vision its percentage of that revenue as a Royalty and Advertising Contribution; failing to pay rent or to reimburse Pearle Vision for payments made by Pearle Vision to store landlords for defendants' rent; failure to maintain liability insurance; failure to maintain an optometrist's license; failure to pay for products and services purchased through Pearle Vision's inventory program; overcharging third-party managed vision care members for products and services in violation of the TPDA and TPPA; and failure to deliver products and services purchased by third-party managed vision care members in violation of the TPDA and TPPA.

The record evidence further shows that after nearly all of these violations Pearle Vision sent defendants a notice of default. While defendants cured some of the defaults within the thirty day grace period, they failed to cure the defaults based on lack of reporting and lack of payment of amounts due to Pearle Vision. Indeed, defendants not only failed to cure the defaults within thirty days of receiving notice on January 28, 2004, but they also failed to cure the defaults after receiving a second notice on May 4, 2004. Both notices clearly and unequivocally informed defendants of Pearle Vision's intent to terminate the franchises if defendants failed to cure the defaults.

Furthermore, Pearle Vision relies on the alternative ground for termination - two or more violations within a 12-month period, a ground that does not require notice or an opportunity to cure. The court need not decide whether two violations within a 12-month period equates to

"repeatedly" failing to comply with the agreement as required by the Illinois Franchise Disclosure Act. As the Seventh Circuit found in *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273 (7th Cir. 1992), "even if the agreement violated the Franchise Disclosure Act by failing to specify some higher number, this would authorize the court, not to strike the entire provision, but only to restrict it to cases in which the franchisee's violations could fairly be described as repeated-and here it should be pointed that there is no 12-month limitation in the Act." Here, Pearle Vision has clearly established a case of repeated violations.

The court is persuaded that there is no genuine issue of material fact as to whether defendants repeatedly and materially violated the four Franchise Agreements thereby justifying Pearle Vision's termination of defendants' franchises. Accordingly, Pearle Vision's motion for summary judgment on Counts I, III, V, and VII is granted.

## II. Termination and Assumption of Leases

In Counts II, IV, VI, and VIII Pearle Vision alleges that it is entitled to terminate or assume the leases for the premises of the four franchises operated by defendants and to take immediate possession of those premises.

The Franchise Agreements and ancillary agreements between the parties, give Pearle Vision the right to either terminate or assume the leases held by defendants for the premises on which the franchises are operated. Specifically, the rider to the lease entered into between Geneva Christina L.L.C. and Romm Enterprises, Inc. gives Pearle Vision the right to assume the balance of the Lease on termination of the Geneva Franchise Agreement. Paragraph 10 of the Sublease entered into between Pearle Vision and Romm & Company for the premises of the Villa Park store provides that Pearle Vision may terminate the Sublease immediately if Romm &

Company defaults under the Villa Park Franchise Agreement. Attachment J-1 to the Elk Grove store gives Pearle Vision the right to assume the balance of the lease entered in between Romm and Elk Grove Town Center, L.L.C. upon the termination of the Elk Grove Franchise Agreement. Paragraph 34A of the Elgin Franchise Agreement provides that Pearle Vision has the right to assume the Lease entered into between Eyes 2000 Ltd. and Greco/Reggi Randall, L.L.C. for the premises of the Elgin store upon the termination of the Elgin Franchise Agreement.

Having already found that Pearle Vision was justified in terminating the Franchise Agreements governing defendants' four franchises, the Court grants Pearle Vision's motion for summary judgment on Counts II, IV, VIII and VII.

## CONCLUSION

For the reasons stated above, Pearle Vision's motion for summary judgment (#56) is granted. Pearle Vision is instructed to submit to the court a proposed order clearly setting forth its claim for damages.

Enter: *[signature]*
CHARLES P. KOCORAS
Chief United States District Judge for

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 1, 2005