UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEARLE VISION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04 C 4349 |
| | ) |
| VICTOR ROMM, d/b/a ROMM & CO., INC., | ) |
| d/b/a ROMM VISION ENTERPRISES, INC., | ) |
| d/b/a EYES 2000, LTD., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

After a discharge in bankruptcy of a substantial judgment, this case is back before this court on the motion of plaintiff, Pearle Vision, Inc. (PVI), for entry of judgment against defendant, Victor Romm, in the amount of $321,000 as a sanction for Romm's willful and malicious conduct and his flagrant and repeated violations of this court's orders, conduct that occurred before the bankruptcy proceeding was filed. The motion is granted.

### I. ORIGINAL PROCEEDINGS IN THIS COURT

In brief, before he filed for bankruptcy, Romm operated four Pearle Vision® stores under franchise agreements in his own name and/or the names of three Illinois corporations he owned. Based on claimed numerous violations of the franchise agreements, PVI notified Romm that it had elected to terminate its relationship with Romm. On June 29, 2004, PVI filed a complaint in this court seeking, among other things, termination of the franchises and possession of certain

leased premises held by Romm and his business entities. On August 13, 2004, PVI filed a motion for preliminary injunction seeking relief relating to the termination of the franchise agreements, including the orderly transition of certain real and personal property, and Romm's turnover of paper and electronic patient records (the "Patient Records"). On September 27, 2004, during the hearing on the motion, the parties announced that they had come to an agreement regarding the personal property and Patient Records and arranged, among other things, for such assets to be made available to PVI on a consensual basis.

Rather than comply with the agreement, however, Romm removed all of the personal property from the PVI store locations, including all of the Patient Records, some of which were on paper files and some of which were on computer files. Romm took not only the records of the patients' deposits for glasses and contact lenses but also the records of their exams and prescriptions. Romm later acknowledged in court that these items were removed via rental truck in the middle of the night to a nearby storage facility.

As a result of Romm's actions, PVI filed another motion for preliminary injunction seeking, among other things, access to the property and Patient Records removed from the stores. On September 30, 2004, this court entered an Emergency Preliminary Injunction ordering Romm to give PVI immediate and unfettered access to the records and granted PVI the right "to inspect and remove all patient charts and records, including all records relating to optometric or ophthalmologic services from the operations on the premises, and [to] inspect any hard drive which may contain any such information."

Romm failed to comply with the Emergency Preliminary Injunction. PVI was unable to locate the Patient Records, notwithstanding Romm's statement on October 1, 2004 that all

2

records were at the stores. On October 2, 2004, PVI re-inspected the four store locations, but no Patient Records were there. Romm also refused to disclose to PVI where he had taken the computers that were previously located at the stores.

As a result, on October 5, 2004, PVI filed a petition for rule to show cause as to why Romm should not be held in contempt for failing to comply with the Emergency Preliminary Injunction. On the next day, this court entered a rule to show cause (the "First Rule to Show Cause") directing Romm to demonstrate why he should not be held in contempt and (again) specifically ordering Romm to deliver all PVI property (fixtures, equipment, financial documents, computers, and patient records, keys, among other items) to PVI at a particular time and place.

Despite the clarity and precise terms of the First Rule to Show Cause, Romm again refused to comply with this court's orders. Therefore, a second petition for rule to show cause was filed by PVI on October 6, 2004. The next day, this court entered a Second Rule to Show Cause, once again directing Romm to demonstrate why he should not be held in contempt of court and once again ordering Romm to produce, among other things, the Patient Records and other property before 3:00 p.m. that day.

Romm continued to ignore this court's orders. Therefore, on October 12, 2004, PVI was forced to file a third petition for rule to show cause, in an attempt to obtain the missing Patient Records and personal property. This petition detailed Romm's conduct and the damage he was causing by failing to comply with this court's repeated orders.

On October 14, 2004, this court entered an order sanctioning Romm (the "First Sanction Order") as follows: ". . . Victor Romm shall be sanctioned at the rate of $1,000 per day from and including October 14, 2004 until such time as he has fully complied with the Preliminary Injunction issued September 30, 2004 and the Petitions [for Rule to Show Cause]."[1]

On October 22, 2004, the court then held a full evidentiary hearing on the three rule to show cause orders. Romm testified at the hearing. Following that hearing, on October 26, 2004 the court entered an Order (the "Second Sanction Order"), finding:

> that defendant Victor Romm has admitted that an electronic copy of the patient/customers' files were maintained for three of the four stores operated by the defendants under the respective Franchise Agreements, that the electronic copy of these files have not been returned, that certain doctor's equipment has not been returned, and that therefore defendant Victor Romm has not complied with those portions of the Preliminary Injunction issued September 30, 2004, or the Rule to Show Cause Order directing him to allow access to and/or return all patient records and equipment removed from the stores.

The Second Sanction Order further provided ". . . , also over the Defendants' objections, that the Rule to Show Cause Orders shall remain in effect, including the $1,000 per day sanction set out in the October 14th order." Finally, on September 12, 2005, this court entered an Order granting judgment on the merits in favor of PVI against Romm, individually in the amount of $325,521.99, relating to non-payment of royalties, advertising contributions, rent and products sold to Romm, and the costs incurred by PVI in connection with the district court litigation pursuant to the Franchise Agreements (the "Judgment and Contempt Order").

---

[1] Romm appealed the First Sanction Order to the Seventh Circuit Court of Appeals, but the appeal was dismissed for lack of prosecution.

The Judgment and Contempt Order specifically provided as follows:

> ... Victor Romm is directed to show cause why a judgment in the additional amount of $321,000 should not be entered against him, which is the accumulated amount of the $1,000/day sanction imposed by the Court in its October 14, 2004 Order, up to and including September 1, 2005, the date summary judgment was entered, after the Court held Victor Romm in civil contempt for failing to return to Pearle Vision electronic copies of patient records despite being ordered to do so.

On October 10, 2005, Romm filed for relief under Chapter 7 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), case number 05 B 46897. On October 13, 2005, due to Romm's bankruptcy filing, this court dismissed this proceeding without prejudice with leave to reinstate.

## II. THE PROCEEDINGS IN BANKRUPTCY COURT

The money judgment for breach of contract damages was discharged in bankruptcy. PVI, however, filed a complaint pursuant to 11 U.S.C. §§ 523(a)(6) in the bankruptcy court for a determination that the $321,000 sanction imposed by this court was not subject to discharge. Romm moved to dismiss that complaint, arguing that (i) this court had never held him in contempt and (ii) the sanctions imposed against him were never reduced to judgment.

After the matter was fully briefed and argued, the bankruptcy court denied Romm's motion to dismiss. Specifically, the bankruptcy court determined that Romm's first argument – that this court never found Romm in contempt – was irrelevant at best. Rather, the issue before it was whether the conduct leading up to such contempt was "willful and malicious" under section 523(a)(6) of the Bankruptcy Code. Next, the bankruptcy court disagreed with Romm's argument that because the sanctions were never reduced to a judgment, there was no "debt" which could be

5

deemed nondischargeble. Finally, the bankruptcy court noted that this court had given Romm the opportunity to show cause why the sanctions should not be reduced to judgment, but Romm filed for bankruptcy before that issue could be decided. Accordingly, because the bankruptcy court believed this court in a better position to determine whether Romm has shown cause why the sanctions should not be reduced to judgment, the bankruptcy court stayed the bankruptcy action (and modified the discharge injunction) so that PVI could seek final resolution of the sanctions issue from this court.

Authorized to return to this court, PVI moved to reinstate these proceedings for the purpose of obtaining a determination that Romm has not shown cause, pursuant to the Judgment and Contempt Order entered on September 12, 2005, why judgment in the amount of $321,000 should not be entered against him as a result of his willful and malicious conduct and his flagrant and repeated violations of this court's orders.

## III. THE PENDING ISSUES

This case was called on April 19, 2007 for hearing on PVI's motion to reinstate and for entry of judgment on orders of contempt. Counsel for PVI appeared and Romm appeared individually without counsel. During that hearing this court encouraged the parties to endeavor to reach a settlement amount that would be sufficient but not more than necessary to punish Romm for the violations and to compensate PVI for the extraordinary expense associated with his violations. By order of May 1, 2007 Romm was directed to turn over certain tax returns and other relevant financial disclosures for the purpose of assessing Romm's ability to pay any judgment. The matter was set for status hearing on May 31, 2007 at 9:30. This case was called

on May 31, 2007. Romm did not appear. Counsel for PVI appeared and reported that Romm had not received any communication or documents from Romm under the May 1 order and again requested entry of judgment.

After the hearing of May 31, the court was informed by staff that on or about May 21, 2007, Romm had delivered to the Clerk for filing certain documents. The documents were not filed because they did not comply with the court's rule that a case caption must be on any filed document. The documents included a copy of the court's May 1, 2007 order with handwritten notes indicating that Romm has no bank accounts, no interest in real property and no interest in any business; a completed *in forma pauperis* application; and an unsigned copy of a 2005 tax return in the name of Victor Romm and Irina Kasvina. These documents appeared to be responsive to the May 1 order but were not fully responsive, and there was no indication that they had been delivered to the plaintiff as directed. By order of May 31, this court directed Romm to withdraw the documents from the court and deliver them to counsel for plaintiff and to complete compliance with the May 1 order. The Clerk mailed a copy of this order to Romm's last known address. The motion for entry of judgment was continued to June 12, 2007 at 9:30, and Romm was specifically directed to appear. Romm did not appear on June 12, 2007.

At this point, the court finds no basis on which it might discharge any of the rules to show cause. As this court stated in its order of October 26, 2004, Romm admitted that he had patients' records on his computers in at least three of his four Pearle Vision locations. The witnesses who testified at the evidentiary hearing, including a computer expert testifying on behalf of PVI, made it clear that Romm did not turn over all the computer records. He also

7

did not turn over all the paper records. This left PVI without the ability to service PVI's patients and it caused expense and hardships to the patients. Romm flaunted the agreements he made with PVI, but more important, Romm simply disregarded any directive this court gave to him. He had a full and fair opportunity to participate, and he did for awhile participate personally and with competent counsel. Romm was present in court when he was ordered to turn over the records he said he had. He had it in his own power to obey the court's orders or to show cause why he should not be held in contempt of court based on excusable reasons for disobedience. He simply refused to do it and instead converted PVI's property. His conduct is plainly willful and malicious and done without just cause or a legitimate excuse. It was done with substantial certainty to cause harm and with a motive to cause harm.

This Court has the inherent authority to enforce its orders through civil contempt proceedings. *United States* v. *Dowell*, 257 F.3d 694, 699 (7th Cir. 2001); *Jones* v. *Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999). It is permissible to use civil contempt proceedings to enforce compliance with an agreed order. *Tranzact Technologies, Inc.* v. *1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). If there was an order that set forth in specific detail an unequivocal command that the respondent violated, then contempt proceedings are appropriate. *Tranzact, supra*, 406 F.3d at 855; *Jones, supra*, 188 F.3d at 738. Civil contempt proceedings are appropriate to compel compliance with the court's orders so that the dignity and authority of the court are preserved. They are also properly used to compensate the complaining party for damages caused by the recalcitrant party. *Jones, supra*, 188 F.3d at 738; *Dowell, supra*, 257 F.3d at 699.

At the time when this court was at the point of entering final judgment, the amount of the fine imposed had reached $321,000. Romm's contemptuous conduct has caused PVI to incur substantial additional fees and expenses on what has ended in fruitless efforts to get Romm to adhere to his initial agreement to surrender the stores and to comply with this court's repeated direct and specific orders to turn over the patients' records.

## CONCLUSION AND ORDER

Based on the record of Romm's willful refusal to turn over the patients' records, that he admitted under oath that he possessed, and thus his willful refusal to comply with the specific and direct orders of the court, the court holds Romm in contempt of court and enters a final judgment against him in favor of Pearle Vision, Inc. and Pearle, Inc. and against Victor Romm in the amount of $321,000.

Dated: June 14, 2007         ENTER: _____
                             JOAN HUMPHREY LEFKOW
                             United States District Judge